■ In the Matter of BOARD OF EDUCATION, LAKELAND CENTRAL SCHOOL DISTRICT OF SHRUB OAK, Appellant, v STATE EDUCATION DEPARTMENT et al., Respondents.—Harvey, J.—Ap-

peal from a judgment of the Supreme Court at Special Term (Connor, J.), entered March 20, 1985 in Albany County, which, in a proceeding pursuant to CPLR article 78, granted respondents' motion to dismiss the petition for failure to state a cause of action.

In this CPLR article 78 proceeding, petitioner seeks to compel respondents to reimburse it for State aid funds which were withheld on a retroactive basis from its June 1984 State aid payment. Respondents moved for dismissal of the petition, asserting objections in point of law pursuant to CPLR 7804 (f). As permitted by that provision, respondents did not submit an answer to the petition prior to their dismissal motion.

In their motion to dismiss, respondents asserted that article 78 relief is barred by operation of the four-month Statute of Limitations (CPLR 217). We, as did Special Term, disagree with that contention. The controlling date which commenced the running of the applicable Statute of Limitations was June 29, 1984, the date petitioner received its Board of Cooperative Educational Services (BOCES) State aid payment from which the decision was made. Here, as in *Matter of Chemical Bank v Regan* (90 AD2d 581, 582, *affd* 58 NY2d 809), the right to commence this article 78 proceeding accrued when respondent Comptroller's audit decision became final and binding. That occurred when the deduction on the basis of the audit was actually made from petitioner's 1984 BOCES State aid payment *(see, supra,* at p 582). Thus, the instant proceeding was timely commenced by service of the petition within four months thereafter *(cf. Board of Educ. v Ambach,* 49 NY2d 986, 987, *cert denied* 449 US 874).

The second objection in point of law is respondents' contention that the petition does not state a cause of action. Special Term granted the motion on that ground, determining that the first stated cause of action raised only constitutional issues in which petitioner had no standing and the second cause of action based upon equitable estoppel was not maintainable against a governmental agency. We agree as to the second cause of action, but disagree as to the first for the reason that more than a constitutional issue is raised.

Since respondents elected not to submit an answer prior to moving for dismissal, we are required to treat their motion as one directed only to the sufficiency of the pleadings in a manner similar to the determination of a CPLR 3211 motion *(see, Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs.,* 63 NY2d 100, 102-103; McLaugh-

lin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7804:7, p 507). On such a motion, we are limited to examining the petition to determine whether it states a cause of action *(Matter of De Paoli v Board of Educ.,* 92 AD2d 894; *Matter of Stokes v Connelie,* 81 AD2d 988, 989). In examining the sufficiency of the petition, we must accept the facts alleged therein as true and interpret them in the light most favorable to petitioner *(Matter of Burke v Carey,* 82 AD2d 953, 954; *Matter of Stokes v Connelie, supra,* p 989; *Matter of Board of Educ. v Allen,* 32 AD2d 985). Only affidavits submitted by petitioner in support of his causes of action may be considered on a motion of this nature *(Rovello v Orofino Realty Co.,* 40 NY2d 633, 635-636; *Matter of Burke v Carey, supra,* p 954). It is significant that although Special Term could have considered the matter as a motion for summary judgment upon proper notice to the parties (CPLR 3211 [c]), it did not do so.

Reviewing the petition, we find that petitioner has stated a claim for article 78 relief. The petition sets forth that, in 1976, petitioner sought and received approval of respondent Commissioner of Education, pursuant to the provisions of Education Law § 1950 (4) (d), to contract with its BOCES to provide certain instructional services for handicapped students. This program was later carried out by utilizing five resource rooms located within petitioner's school district and by instructional services provided by BOCES. From time to time, petitioner was billed for those instructional services and paid said bills in accordance with the BOCES contract approved by the Commissioner (Education Law § 1950 [4] [f]). Each participating component school district was granted State aid in accordance with a formula computed upon the basis of student participation. The statute imposed the requirement that a school district receiving BOCES State aid must provide the programs "on a cooperative basis" (Education Law § 1950 [4] [d]).

The thrust of the petition is that petitioner fully complied with all aspects of law and regulations and received State aid as provided by law. Petitioner received a communication from the Commissioner with a copy of a letter dated April 2, 1979 and signed by the Comptroller, which revealed a policy not previously expressed. The letter stated that in performing audits, the Comptroller had discovered that in certain instances the sharing of BOCES programs was accomplished only on a token basis and that the practice would not be tolerated beyond July 1, 1979. The letter stated specifically

that there would be forgiveness of any claim for retroactive disallowance of State aid payments made. The petition further alleges that in spite of said assurance by the Comptroller, respondent Department of Education disallowed $75,970.73 of the State aid previously given to petitioner for the 1976-1977 school year.

It is the contention of petitioner that it is entitled to a return of the disallowed State aid for three reasons. The first is that the decision of the Comptroller as to shared programs was illegal, arbitrary and capricious. The petition, including the exhibits attached thereto, states the contention that although conceivably only a token sharing of resource rooms might have taken place to a minor degree within petitioner's school district, the over-all program was available to all of the component districts and the total program was shared by more than a token number of students. Secondly, it is contended that the Comptroller's decision represented a change of policy which could not be given retroactive effect. Third, if it were assumed that the change of policy was proper and did have a legal retroactive effect, petitioner claims that the Comptroller waived any right to the retroactively imposed disallowance.

Special Term dismissed the first cause of action, finding that it sought only relief for alleged violations of petitioner's constitutional rights by respondents. That court also dismissed petitioner's second cause of action, asserting that respondents should be estopped from recovering the BOCES State aid. While dismissal as to the second cause of action was proper, it was error with reference to the first cause of action set forth in the petition. Article 78 provides a remedy for actions of an administrative body which are illegal or arbitrary and capricious *(Matter of Conley v Ambach,* 61 NY2d 685, 687; *Matter of Pell v Board of Educ.,* 34 NY2d 222, 231-234; *Matter of Johnson v Ambach,* 74 AD2d 986; Siegel, NY Prac § 557, at 774; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7801:3; CPLR C7801:4, pp 30-31). "Whether administrative action violates applicable statutes and regulations is a question within the traditional competence of the courts to decide" *(Matter of Dental Socy. v Carey,* 61 NY2d 330, 335).

The petition also claims error in respondents' recoupment predicated on a retroactive application of the Comptroller's policy. Recoupment by respondents may be improper *(see, Matter of Daleview Nursing Home v Axelrod,* 62 NY2d 30, 33-

34; *see also, Hurlbut v Whalen,* 58 AD2d 311, 318-319, *lv denied* 43 NY2d 643).

Finally, petitioner asserts that respondents waived recoupment of the BOCES State aid. Here, too, petitioner has stated a claim for relief which could be sustained upon proper proof. The exhibits attached to the petition create an issue to be resolved at trial *(see, Hadden v Consolidated Edison Co.,* 45 NY2d 466, 469; *see also, City of New York v State of New York,* 40 NY2d 659, 669; 21 NY Jur, Estoppel, Ratification, and Waiver, § 93, at 131 [1961]).

In so deciding, we find only that petitioner has sufficiently set forth at least those three claims for article 78 relief. We do not intend our decision to limit or exclude any other matters which may reasonably be inferred from the pleadings, nor do we determine that petitioner is necessarily entitled to relief. That determination must await receipt of proof on the issues raised.

Judgment modified, on the law, with costs to petitioner, by reversing so much thereof as dismissed petitioner's first cause of action; motion denied as to that cause of action; and, as so modified, affirmed. Mahoney, P. J., Main, Yesawich, Jr., and Harvey, JJ., concur.

Levine, J., concurs in part and dissents in part in the following memorandum. Levine, J. (concurring in part and dissenting in part). In my view, petitioner's CPLR article 78 proceeding is barred by the four-month Statute of Limitations (CPLR 217). The underlying controversy is over recoupment of State aid payments made to petitioner on account of resource room programs conducted at petitioner's facilities during the 1976-1977 school year by respondent Board of Cooperative Educational Services (BOCES). In 1979, respondent Comptroller announced that, in auditing BOCES funding and expenditures, the applicable statutory authorization for such BOCES programs at individual school district facilities (and State aid payment therefor) (Education Law §§ 1950, 1951) would be interpreted to require the substantial sharing of use of any such facility by BOCES students from districts other than the district providing the facility. Hence, the Comptroller would disallow any such State aid payments unless there had been such substantial sharing. In this initial announcement, however, the Comptroller indicated that his ruling would not be applied retroactively. However, in a 1983 audit of BOCES payments for programs using petitioner's and other local school district facilities for the 1975-1977 school years, various payments were tentatively disallowed because there was only

token interdistrict sharing. In a letter to BOCES dated November 29, 1983, respondent State Education Department (the Department) indicated the total amount disallowed in BOCES payments to all affected school districts for the period in question, and set forth a specific amount of reduction for each such district, including petitioner's. The Comptroller's audit report was passed on from the Department to BOCES and to petitioner. Petitioner duly protested the audit report to the Department and the Comptroller's office on the basis that it conflicted with the prior announcement that the substantial sharing requirement would not be applied retroactively.

After several exchanges of correspondence among the various authorities, a letter was sent by the Department to BOCES, dated December 27, 1983, stating in substance that petitioner's protest had been considered, but that unless new information concerning the sharing of facilities for the years in question was forthcoming, the Comptroller's audit disallowance would prevail. The letter also advised that BOCES and the affected districts were not precluded from challenging the Comptroller's determination.

Petitioner has not denied receiving prompt notification of the Department's letter of December 27, 1983, nor of the Comptroller's earlier letter of October 31, 1983, flatly advising that the disallowance would be put into effect. These notifications were unequivocal in informing petitioner that a final, binding determination had been made to disallow the previous payment to petitioner by BOCES for the program using petitioner's facility during the period in question, and that recoupment thereof would be made by a corresponding deduction from current State aid. Under a long line of precedent, such notice by the appropriate State agency of disallowance of otherwise recoverable charges or expenses and recoupment thereof is sufficient to trigger the Statute of Limitations for commencement of judicial review proceedings, without awaiting the actual receipt of a check reflecting the disallowed amount (*Solnick v Whalen,* 49 NY2d 224, 228-229; *Matter of Cabrini Med. Center v Axelrod,* 107 AD2d 965, 966; *Park Shore Manor Health Related Facility v Axelrod,* 85 AD2d 873).

I am unpersuaded by petitioner's countervailing argument that, until it received notification in June 1984 of its State aid payment adjusted to reflect recoupment of the disallowed amount of some $89,000, there was no final determination subject to challenge. The same amount disallowed is set forth in the Comptroller's letter to BOCES of November 29, 1983, a copy of which is also attached to petitioner's petition; and, in

any event, the challenge here does not concern the validity of the Comptroller's determination of the amount disallowed, but solely his allegedly retroactive application of the substantial sharing requirement to impose the disallowance. Nor does the fact that in the Department's letter of December 27, 1983, petitioner was advised of its right to submit additional data or to challenge the Comptroller's decision, postpone the commencement of the limitation period. At most, this merely expressed the right of the State agency to reconsider its determination. Such is not sufficient to render an otherwise final determination nonfinal (Matter of Filut v New York State Educ. Dept., 91 AD2d 722, 723, lv denied 58 NY2d 609; Matter of Seidner v Town of Colonie, 79 AD2d 751, 752, affd 55 NY2d 613). Consequently, petitioner's commencement of this proceeding, some nine months after the Comptroller's determination and some eight months after that of the Department, was time barred, and Special Term's dismissal of the petition should be affirmed.